UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

ANDRES RODRIGUEZ,

      Plaintiff,

v.                                                        Case No. 3:16cv253-LC-CJK

UNKNOWN MEDICAL STAFF AT
TALLAHASSEE MEMORIAL HOSPITAL,
UNKNOWN MEDICAL STAFF AT
CENTURION HEALTHCARE PROVIDER,
and JULIE JONES, SECRETARY OF THE
FLORIDA DEPARTMENT OF
CORRECTIONS,

      Defendants.

_____/

## ORDER and REPORT AND RECOMMENDATION

Plaintiff, proceeding *pro se* and *in forma pauperis*, brought this action under 42 U.S.C. § 1983. The undersigned entered an order (doc. 16) advising that, based on a review of the complaint, it was evident the facts as presented failed to support a viable claim for relief under § 1983. The undersigned provided plaintiff an opportunity to clarify his allegations in an amended complaint.

Plaintiff filed an amended complaint (doc. 19). The amended complaint, however, suffers from certain deficiencies that cannot be cured. Accordingly, the undersigned recommends that plaintiff's claims against 2 defendants, unknown medical staff at Tallahassee Memorial Hospital ("TMH") and Julie Jones, Secretary of the Florida Department of Corrections ('FDOC"), be dismissed. It appears that service on the third defendant, unknown medical staff at Centurion Health Care Provider ("Centurion"), is appropriate.[1]

## BACKGROUND

Plaintiff is an inmate currently confined at Apalachee Correctional Institution in Sneads, Florida. At the time of the events giving rise to the amended complaint, plaintiff was confined at Franklin Correctional Institution ("FCI"). According to the amended complaint, on December 24, 2014, plaintiff was admitted to TMH, where he had an emergency appendectomy. When plaintiff awoke from the surgery, "[h]e discovered that the doctors had made a small incision in his lower right torso area,

---

[1] In the caption of the amended complaint, plaintiff names "Unknown Doctors with Tallahassee Memorial Healthcare" and "Centurion Healthcare Provider, Medical Staff" as defendants. Doc. 19 at p. 1. In the section of the complaint where he is to state the name of the defendant, official position, and place of employment, plaintiff identifies "Unknown Medical Staff" as the name of 1 defendant, the position as "doctors, nurses, and medical assistants," and the place of employment as "Tallahassee Memorial Hospital." Doc. 19 at p. 2. He states the same name and position for a second defendant and identifies the place of employment as "Centurion Healthcare Provider, Contracted by the Florida Department of Corrections." Doc. 19 at p. 2.

Case No. 3:16cv253-LC-CJK

where they took out his organ and then placed a drainage tube in his side to drain out liquid." Doc. 19 at p. 5. Plaintiff had a second emergency surgery the next day, apparently because of a ruptured abscess in his stomach. After the second surgery, plaintiff awoke to "discover that there was another small incision near his lower front abdomen and another drainage tube sticking out of that opening." Doc. 19 at pp. 5-6. Plaintiff was medicated and aware of neither surgery until after it occurred.

"After the 2nd surgery, Mr. Rodriguez stayed at TMH for 5-6 days." Doc. 19 at p. 6. "Every 3 hours or so, the doctors injected Mr. Rodriguez with doses of morphine for the pain." Doc. 19 at p. 6. "He was also given antibiotics one (1) time after each surgery, per doctors order." Doc. 19 at p. 6. "Prior to the end of Mr. Rodriguez's hospital stay, the wound/staples from the 2nd surgery opened up. Yet, the doctors did not sew it back up due to the possibility of infection, they say." Doc. 19 at p. 6. "At the end of Mr. Rodriguez's hospital stay, the doctors removed the tube from Mr. Rodriguez's front, as well as the tube on his side." Doc. 19 at p. 6. "In the process of removing the side tube, one of the medical staff members yanked aggressively on the tube resulting in a rupture in Mr. Rodriguez's intestines, causing feces and other liquid to spill out his side." Doc. 19 at p. 6. "The hospital staff stated that there were 'complications,' and then they used 8-9 towels to clean Mr.

Rodriguez's side up." Doc. 19 at p. 6. "After cleaning Mr. Rodriguez up, TMH sent him back to FCI, that same day." Doc. 19 at p. 6.

"On the day of Mr. Rodriguez's return to FCI, his stomach began to bleed out of the holes very badly, and his entire stomach and abdomen area began to swollen immensely." Doc. 19 at p. 6. "A lot of brownish-reddish liquid began to pour out of the front and side holes where the previous incisions had been made, and Mr. Rodriguez complained to FCI staff about the serious pain he was experiencing." Doc. 19 at p. 6. "Early the next morning, at around 4-5 a.m., the FCI doctor came by to check up on Mr. Rodriguez. After inspecting Mr. Rodriguez's swollen stomach and the leaking side and front incisions, the doctor told Mr. Rodriguez that he had to be sent back to the hospital immediately, due to the circumstances of his condition." Doc. 19 at p. 6. "Mr. Rodriguez was then sent back to TMH a second time." Doc. 19 at p. 6.

"Upon arriving at the hospital, Mr. Rodriguez was cleaned up by hospital staff. They drew blood work, gave him antibiotics regularly (every 2-3 hours), gave him morphine for the pain (every 3 hours), and hooked up a colostomy bag to his side." Doc. 19 at p. 7. "Mr. Rodriguez stayed in the hospital for 10-12 days then was sent to Lake Butler Reception Medical Center (RMC)," where he stayed for 6 months.

Doc. 19 at p. 7.  "This was the timeframe necessary for his front incision to close back up, said the medical staff."  Doc. 19 at p. 7.

"Within the first 2 weeks of Mr. Rodriguez's stay at RMC, it was told to him by medical staff that his kidneys were not working properly and had to be drained."  Doc. 19 at p. 7.  "During the 1st month of Mr. Rodriguez's stay at RMC, a doctor by the name of Contarini said that there were many 'complications' now with Mr. Rodriguez's insides that will require surgery, to fix.  Dr. Contarini further informed Mr. Rodriguez that his appendix did not bust and should have never been removed."  Doc. 19 at p. 7.  "Dr. Contarini then had Mr. Rodriguez sent to Jackson Hospital where he (Dr. Contarini) performed surgery on Mr. Rodriguez wherein he removed and replaced the colostomy bag.  He was thereafter sent back to RMC."  Doc. 19 at p. 7.

"After about 4 months at RMC, the doctors again had Mr. Rodriguez sent to Jackson Hospital this time to drain his kidneys."  Doc. 19 at p. 7.  "It was told to Mr. Rodriguez by staff, that his kidneys were swollen because of an abscest and needed to be drained."  Doc. 19 at p. 7.  "At Jackson Hospital, another tube was attached to Mr. Rodriguez in order to drain his kidneys.  Mr. Rodriguez was thereafter given

loritabs and other medication for pain and treatment, and was then sent back to RMC." Doc. 19 at p. 7.

"After about 5 months at RMC, the doctors had the bag and tubes removed from Mr. Rodriguez.  From then on until the end of the 6-month period, Mr. Rodriguez remained at RMC and was given basic treatment and up-keep." Doc. 19 at p. 7.  "Medical staff there prescribed him 3 different types of meds (i.e. meds for pain, meds to help him use the bathroom, and a 3rd unknown med)." Doc. 19 at p. 7.  "At the end of the 6-month period, Mr. Rodriguez was sent back to FCI," where he "was getting his prescribed meds regularly; all except the pain meds." Doc. 19 at pp. 7-8.

"After about 2 weeks or so, Mr. Rodriguez was sent back to TMH due to his constant complaints about pain.  At TMH, the doctors discovered and had to drain, another abscest that had formed due to the colostomy bag." Doc. 19 at p. 8.  "Mr. Rodriguez remained at TMH for 4-5 days this time, then was sent to his current facility Apalachee Correctional Institution (ACI), on October 16, 2015." Doc. 19 at p. 8.

"At ACI, Mr. Rodriguez began psychological counseling, and began taking psyche meds due to the adverse psychological effects his injury was having on him."

Doc. 19 at p. 8.  He "continued to receive all of the medications that was prescribed to him from RMC (3 different types) up until his prescription ran out 6 months-1 year after his arrival at ACI (i.e. between 4/16/2016-10/16/2016)."  Doc. 19 at p. 8. "When his prescriptions ran out, Mr. Rodriguez put in a sick-call request to renew all 3 prescriptions.  The medical department granted his request in-part (renewing his prescriptions for the defication pills and the unknown pills) and denying his request in-part (refusing to prescribe him any medication for pain)."  Doc. 19 at p. 8.  "The two renewed meds were prescribed until around July, 2017, but no pain medication has since been prescribed, even though Mr. Rodriguez's adverse health conditions still exist."  Doc. 19 at p. 8.

"Between 10/16/2016 to the present date, Mr. Rodriguez has submitted 3-4 sick-call requests regarding his on-going pain and the lack of pain meds or further treatment."  Doc. 19 at p. 8.  "Over the last year, Mr. Rodriguez has initiated 9 medical emergencies (5 within the last 3 months) regarding these same issues.  Mr. Rodriguez has also grieved these issues to the Warden of ACI, as well as, to the Secretary of the Florida Department of Corrections; to no avail."  Doc. 19 at p. 8.

"Lately, Mr. Rodriguez's psychological visits have increased as a result of the lack of action taken by the medical department."  Doc. 19 at pp. 8-9.  "Over the past

year, Mr. Rodriguez has been sent to RMC 3-4 times for photos and scans of his abdomen by medical staff, but no surgical procedures have been conducted nor has any medication for his pain been prescribed." Doc. 19 at p. 9. "Last attempt by ACI to send Mr. Rodriguez to RMC for photos, Mr. Rodriguez had a psyche episode due [to] the perceived ongoing 'back and forth' between the medical department and RMC for photos and scans, but never for pain treatment or procedures; Mr. Rodriguez unintelligently refused the trip." Doc. 19 at p. 9.

Plaintiff asserts claims under the Eighth Amendment for cruel and unusual punishment. According to plaintiff, "Tallahassee Memorial Hospital's unwarranted removal of Plaintiff's appendix, and the resulting 'domino effect' thereafter, was grossly incompetent, inadequate, and excessive as to shock the conscience and constitute an 8th Amendment violation." Doc. 19 at p. 10. He alleges "Florida Dept. of Correction's, and Centurion Healthcare Provider's, deliberate indifference to Plaintiff's serious medical need of pain medication and corrective surgery for over the past 1+ years, likewise violates his 8th Amend. rights." Doc. 19 at p. 10. "Plaintiff seeks compensatory relief commensurate to 20 years of labor in the landscaping/trash pickup industries, or $3 million dollars, individually and severally.

Plaintiff also seeks punitive damages in the amount of $3 million dollars from defendants, individually and severably." Doc. 19 at p. 10.

## DISCUSSION

Because plaintiff is proceeding *in forma pauperis*, the court must dismiss his complaint if it determines it is "(i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). The court must read plaintiff's *pro se* allegations in a liberal fashion. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). Dismissals for failure to state a claim are governed by the same standard as FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6). *See Mitchell v. Farcass*, 112 F.3d 1483, 1485 (11th Cir. 1997). In determining whether the complaint states a claim upon which relief may be granted, the court accepts all factual allegations in the complaint as true and evaluates all reasonable inferences derived from those facts in the light most favorable to the plaintiff. *See Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1483 (11th Cir. 1994). The complaint may be dismissed if the facts as pleaded do not state a claim to relief that is plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (retiring the negatively-glossed "no set of facts" language previously used to describe the motion to dismiss standard and dismissing

plaintiffs' case for failure to state a claim because plaintiffs had "not nudged their claims across the line from conceivable to plausible").  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009).

In order to state a claim under 42 U.S.C. § 1983, plaintiff must allege that "some person, acting under color of state law, deprived plaintiff of rights, privileges, or immunities secured by the Constitution and laws of the United States." *Blanton v. Griel Mem'l Psychiatric Hosp.*, 758 F.2d 1540, 1542 (11th Cir. 1985) (internal marks omitted); 42 U.S.C. § 1983.  Deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment, *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); however, "[m]edical treatment violates the Eighth Amendment only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'  Mere incidents of negligence or malpractice do not rise to the level of constitutional violations." *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991) (internal citations omitted).

To prevail on an Eighth Amendment deprivation of medical care claim, a prisoner must prove 3 elements.  First, the plaintiff must demonstrate "an objectively

serious medical need" so grave that, "if left unattended, [it] poses a substantial risk of serious harm." *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000) (internal quotation marks, alterations, and citations omitted). "[A] serious medical need is . . . one . . . diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003) (internal marks omitted).

The second element requires "a subjective intent by the public officials involved to use the sufficiently serious deprivation in order to punish." *Taylor*, 221 F.3d at 1258. "To show the required subjective intent to punish, a plaintiff must demonstrate that the public official acted with an attitude of 'deliberate indifference.'" *Id.* (*quoting Estelle*, 429 U.S. at 105). Deliberate indifference is established only when the plaintiff demonstrates that the official knew of and disregarded an excessive risk to his health or safety; in other words, "the official must both [have been] aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and he must also [have] draw[n] the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The official's response must have been so inadequate as to "constitute an unnecessary and wanton infliction of pain" and not "merely accidental inadequacy, negligence in diagnosis or treatment,

or even medical malpractice actionable under state law." *Taylor*, 221 F.3d at 1258. Notably, where the inmate received medical attention and the dispute is over the adequacy of that attention, courts should be reluctant to question the accuracy or appropriateness of the medical judgments that were made. *Harris*, 941 F.2d at 1507 (*quoting Waldrop v. Evans*, 871 F.2d 1030, 1035 (11th Cir. 1989)); *see also Woody v. Cronic*, 401 F. Appx. 509, 512 (11th Cir. 2010) (unpublished opinion) ("Generally, an inmate who receives a medical diagnosis and care, but desires a different diagnosis or treatment, cannot show deliberate indifference."). Indeed, a difference of opinion over matters of medical judgment does not give rise to a constitutional claim. *Harris*, 941 F.2d at 1505; *Waldrop*, 871 F.2d at 1033; *Murrell v. Bennett*, 615 F.2d 306, 310 n.4 (5th Cir. 1980).[2]

In order to satisfy the final element of an Eighth Amendment claim for deprivation of medical care, a plaintiff must show that the official's deliberate indifference caused his injury. *Taylor*, 221 F.3d at 1258; *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306–07 (11th Cir. 2009) (reiterating the elements of an Eighth Amendment claim).

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Here, plaintiff has named as defendants unknown medical staff at TMH and Centurion. As set forth above, to state a viable § 1983 claim, plaintiff must allege a deprivation committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988) (*citing Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled in part on other grounds*, *Daniels v. Williams*, 474 U.S. 327, 330-331 (1986)); *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1303 (11th Cir. 2001). "[T]he under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (internal quotations omitted). Only in rare circumstances may a private party be viewed as a state actor for § 1983 purposes:

> [T]o hold that private parties . . . are State actors, th[e] court must conclude that one of the following three conditions is met: (1) the State has coerced or at least significantly encouraged the action alleged to violate the Constitution (State compulsion test); (2) the private parties performed a public function that was traditionally the exclusive prerogative of the State (public function test); or (3) the State had so far insinuated itself into a position of interdependence with the private parties that it was a joint participant in the enterprise (nexus/joint action test).

*Rayburn ex rel. Rayburn v. Hogue*, 241 F.3d 1341, 1347 (11th Cir. 2001) (internal quotations omitted). Plaintiff's allegations with respect to medical providers at TMH do not remotely suggest the kind of action that would subject these private party

defendants to § 1983 liability as "state actors."   Moreover, at best, plaintiff has

alleged negligence against providers at TMH.   Such allegations are insufficient to

sustain an Eighth Amendment claim.   *See Rivas v. Freeman*, 940 F.2d 1491, 1496

(11th Cir. 1991) ("To successfully litigate a lawsuit for deprivation of constitutional

rights under 42 U.S.C. section 1983, a plaintiff must show violation of a

constitutionally protected liberty or property interest and deliberate indifference to

constitutional rights.   The negligent act of an official causing unintended loss or

injury to life, liberty or property does not implicate due process rights under 42

U.S.C. § 1983.") (internal marks omitted).   Plaintiff's claims against unnamed

doctors, nurses, and medical assistants at TMH thus are due to be dismissed.

The same does not hold true with respect to Centurion providers.   "When a

private entity . . . contracts with a county to provide medical services to inmates, it

performs a function traditionally within the exclusive prerogative of the state.   In so

doing, it becomes the functional equivalent of the municipality."   *Buckner v. Toro*,

116 F.3d 450, 452 (11th Cir. 1997)) (citations omitted).   Thus, the entity is liable

under § 1983 for injury resulting from performance of that function if the injury

resulted from the entity's policy or custom.   Similarly, "employees of a private entity

hired by a county to provide medical care to jail inmates act[ ] under color of state law

so as to be subject to liability under § 1983" because they "perform[ ] a function which is traditionally the exclusive prerogative of the state when . . . attending to inmate medical needs." *Ort v. Pinchback*, 786 F.2d 1105, 1107 (11th Cir. 1986) (internal marks omitted). The undersigned finds that plaintiff has alleged sufficient facts to state an Eighth Amendment claim against Centurion providers based on the alleged failure to provide pain medication and adequate medical care to plaintiff.

As the Eleventh Circuit explained,

> A core principle of Eighth Amendment jurisprudence in the area of medical care is that prison officials with knowledge of the need for care may not, by failing to provide care, delaying care, or providing grossly inadequate care, cause a prisoner to needlessly suffer the pain resulting from his or her illness. In *Estelle*, the Supreme Court recognized that the Eighth Amendment requires the government "to provide medical care for those whom it is punishing by incarceration" precisely because the failure to do so "may actually produce physical 'torture or a lingering death'" or, "[i]n less serious cases, ... may result in pain and suffering which no one suggests would serve any penological purpose." *Estelle*, 429 U.S. at 103, 97 S.Ct. 285 (quoting *In re Kemmler*, 136 U.S. 436, 447, 10 S.Ct. 930, 34 L.Ed. 519 (1890)).

*McElligott v. Foley*, 182 F.3d 1248, 1257 (11th Cir. 1999). The court noted that it previously had "recognized that prison officials may violate the Eighth Amendment's commands by failing to treat an inmate's pain." *Id.* Plaintiff's claims against

Centurion providers, therefore, should proceed.  *See, e.g., Benson v. Gordon Cnty., Ga.*, 479 F. App'x 315, 318-19 (11th Cir. 2012) (holding that, when viewed in the light most favorable to plaintiff, allegations that defendant withheld medication for back pain, whether deliberately or as a result of grossly inadequate medical care, were sufficient to state a claim of deliberate indifference to serious medical needs).

Finally, with respect to plaintiff's claims against Julie Jones, absent waiver or express congressional abrogation, neither of which is present in this case, the Eleventh Amendment prohibits a suit brought by a private individual against a state in federal court. *Fed. Mar. Comm'n v. S.C. State Ports Auth.,* 535 U.S. 743, 751-53 (2002); *Ky. v. Graham*, 473 U.S. 159, 167 n.14 (1985); *Gamble v. Fla. Dep't of Health and Rehab. Servs.*, 779 F.2d 1509, 1511 (11th Cir. 1986).  Eleventh Amendment immunity extends to state agents and state instrumentalities, *Regents of the Univ. of Calif. v. Doe*, 519 U.S. 425, 429 (1997), as well as arms of the state and state officials.  *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977).  Ms. Jones is a state agent and/or official; as such, she is not subject to this suit.  *See, e.g., Gibson v. Doe*, 629 F. App'x 868, 871 (11th Cir. 2015) (holding that claims against Secretaries of the Florida Department of Corrections are barred by the Eleventh Amendment).

Moreover, to the extent plaintiff seeks to hold Jones responsible for the acts of her subordinates, such claim fails as a matter of law.  "It is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability." *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal marks and citation omitted); *see also Polk Cnty. v. Dodson*, 454 U.S. 312 (1981); *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003).  "The mere right to control, without any control or direction having been exercised and without any failure to supervise, is not sufficient to support 42 U.S.C. § 1983 liability." *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 694 n.58 (1979).  "Supervisory liability occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between the actions of the supervising official and the alleged constitutional deprivation." *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990) (citations omitted).  In *Douglas v. Yates*, 535 F.3d 1316 (11th Cir. 2008), the Eleventh Circuit specified the circumstances in which a causal connection can be shown sufficient to render a supervisor liable on a § 1983 claim, as follows:

> when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation and he fails to do so; when the supervisor's improper custom or policy leads to deliberate

indifference to constitutional rights; or when facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.

*Id.* at 1322 (citing *West v. Tillman*, 496 F.3d 1321, 1328-29 (11th Cir. 2007)). Plaintiff presents no such allegations against Jones. Hence, plaintiff's claims against Jones are due to be dismissed.

In sum, the undersigned finds that plaintiff has failed to state a constitutional claim against TMH providers and Julie Jones upon which relief can be granted. The undersigned also finds that service of the amended complaint on Centurion is appropriate so that plaintiff may ascertain the identities of the providers at issue. Plaintiff is not responsible for the costs of service, as he is proceeding *in forma pauperis*. Plaintiff is responsible, however, for providing the court with 1 service copy of his amended complaint, which must be identical to the amended complaint filed with the court.

According, it is hereby ORDERED:

1.      Within **30 days** of the date of this order, plaintiff shall provide the court with 1 **identical service copy of the amended complaint** (doc. 19). This case number should be written on the copy.

2.      In addition, to continue the prosecution of this case and to more expeditiously complete service of process, plaintiff must sign and return certain forms along with the service copy of his complaint.  When sending plaintiff a copy of this order, the clerk shall also provide plaintiff with a prepared Notice of a Lawsuit and Request to Waive Service of a Summons (For Use by Prisoners and Pro Se Plaintiffs Proceeding In Forma Pauperis) form for Centurion of Florida, LLC, c/o CT Corporation System, Registered Agent.[1]

3.      Within **30 days** of the date of this order, plaintiff shall **sign** and **return to the clerk** the Notice of a Lawsuit and Request to Waive Service of a Summons form.  Plaintiff shall make no other modifications to the form.

4.      Upon receipt of the service copy and signed Notice of a Lawsuit and Request to Waive Service of a Summons (For Use by Prisoners and Pro Se Plaintiffs Proceeding In Forma Pauperis) form, the court will direct the United States Marshals Service to serve Centurion.

---

[1] The clerk shall fill in the caption, the case number, and the name of the defendant on the form. Additionally, the clerk shall fill in "30" in the space indicating the number of days within which the defendant must return the signed waiver.

Case No. 3:16cv253-LC-CJK

5.    Failure to comply with this order as instructed will result in a recommendation that this case be dismissed for failure to comply with an order of the court.

And it is respectfully RECOMMENDED:

1.    That plaintiff's claims against Tallahassee Memorial Hospital and Julie Jones be DISMISSED WITHOUT PREJUDICE pursuant to 28 U.S.C. § 1915(e)(2)(B) for plaintiff's failure to state a claim upon which relief can be granted.

2.    That the clerk of court be directed to update the docket to reflect the sole remaining defendant, Unknown Medical Staff at Centurion Health Care Provider.

At Pensacola, Florida this 5th day of February, 2018.

/s/ Charles J. Kahn, Jr.
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

     **Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the magistrate judge and all other parties.  A party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* U.S. Ct. of App. 11th Cir. Rule 3-1; 28 U.S.C. § 636.**